1 **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JEFFREY S. RANEN, SB# 224285
2   E-Mail: Jeffrey.Ranen@lewisbrisbois.com
AASHISH BHARGAVA, SB# 265508
3   E-Mail: Aashish.Bhargava@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 Los Angeles, California 90071
Telephone: 213.250.1800
5 Facsimile: 213.250.7900

6 Attorneys for Defendant, NATIONAL
RETAIL TRANSPORTATION
7

8               UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

| | |
|---|---|
| 11 GLORIA BLAS, an individual, | CASE NO. 2:14-cv-08049-JFW (ASx) |
| 12           Plaintiff, | |
| 13      vs. | **DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| 14 CORPORATE RESOURCE SERVICES, INC., a Delaware corporation; NATIONAL RETAIL TRANSPORTATION, a Pennsylvania corporation; and DOES 1 through 20, inclusive, | |
| 15 | [Filed Concurrently with Separate Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Nicholas Bergonzi, Arthur Hopkins, and Sanda Ruiz; and [Proposed] Order] |
| 16 | |
| 17           Defendants. | |
| 18 | Date:            October 5, 2015 |
| 19 | Time:            1:30 p.m.<br>Crtrm:           16 |
| 20 | |
| 21 | Action Filed:   September 9, 2014<br>Pre-Trial        October 16, 2015<br>Trial Date:      November 3. 2015 |
| 22 | |

23      TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR

24 ATTORNEYS OF RECORD:

25      PLEASE TAKE NOTICE that on October 5, 2015 at 1:30 p.m. in the above-

26 entitled Court, located at 312 North Spring Street, Los Angeles, California 90012,

27 Defendant National Retail Transportation, Inc. ("Defendant") will move the Court,

28 pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

4841-9075-0503.1

DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1   on each of Plaintiff Gloria Blas' causes of action on the grounds that Defendant was

2   not her employer and had no joint employer relationship with Plaintiff.

3          This Motion is based on this Notice as well as the accompanying

4   Memorandum of Points and Authorities, supporting declaration and exhibits, and the

5   Statement of Uncontroverted Facts and Conclusions of Law.  Defendant also relies

6   on all pleadings and papers on file in this action, and any oral argument that may be

7   presented at the time of the hearing of this Motion.

8          This motion is made following the conference of counsel pursuant to L.R. 7-3

9   which took place on or about August 4, 2015 and August 27, 2015 and thereafter.

10  Despite genuine attempts to resolve the matter informally, the parties were unable to

11  agree on any of the issues presented by this Motion.

12

13  DATED: September 3, 2015          LEWIS BRISBOIS BISGAARD & SMITH LLP

14

15

16                                    By: _____/s/ Aashish Bhargava_____

17                                         Aashish Bhargava
                                           Attorneys for Defendant, NATIONAL
18                                         RETAIL TRANSPORTATION

19

20

21

22

23

24

25

26

27

28



4841-9075-0503.1

DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1

# **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3   I.      INTRODUCTION ................................................................. 1

4   II.     SUMMARY OF ARGUMENT ............................................. 1

5   III.    PROCEDURAL POSTURE ................................................. 2

6   IV.     STATEMENT OF RELEVANT FACTS ............................. 3

7          A.      CRS Maintained a Temporary Staffing Services Agreement
8                  With NRT Designating It As Plaintiff's Sole Employer for All
                   Relevant Purposes ............................................................. 3

9          B.      Diamond Staffing/CRS' Employees Supervised Plaintiff on a
                   Day-To-Day Basis and Controlled the Manner and Means of
10                 Her Job Duties ................................................................... 4

11         C.      Diamond Staffing/CRS Made the Decision to Terminate
                   Plaintiff, Not NRT ............................................................. 7

12  V.      LIABILITY ANALYSIS ...................................................... 8

13         A.      NRT Is Not Liable For Any of Plaintiff's Causes of Action
14                 Because NRT Was Not Her Employer and It Had No Day-to-
                   Day Control Over Her Job Duties ..................................... 8

15         B.      NRT Is Not Liable For Any of Plaintiff's Causes of Action
16                 Because the Totality of Circumstances Establish that No
                   Joint Employment Relationship Existed Between NRT and
17                 Diamond Staffing/CRS ...................................................... 11

18  VI.     CONCLUSION ................................................................... 12

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

3
<u>CASES</u>

4
<u>Carrisales v. Department of Corrections,</u>
   (1990) 21 Cal.4th 1132......................................................................8

5

6
<u>Caso v. Nimrod Productions, Inc.,</u>
   (2008) 163 Cal. App. 4th 881..........................................................11

7
<u>Jones v. County of Los Angeles,</u>
   (2002) 99 Cal. App. 4th 1039............................................................9

8

9
<u>Kowalski v. Shell Oil Co.,</u>
   (1979) 23 Cal.3d 168....................................................................9, 10

10
<u>Laird v. Capital Cities/ABC, Inc.,</u>
   (1998) 68 Cal. App. 4th 737-38.........................................................8

11

12
<u>Marsh v. Tilley Steel Co.,</u>
   (1980) 26 Cal.3d 486.........................................................................10

13
<u>Riley v. Southwest Marine, Inc.,</u>
   (1988) 203 Cal. App. 3d 1242............................................................9

14

15
<u>Stevenson v. Sup. Ct.,</u>
   (1997) 16 Cal.4th 880.........................................................................8

16
<u>Vernon v. State,</u>
   (2004) 116 Cal. App. 4th 114.........................................................8, 9

17

18
<u>STATUTORY AUTHORITIES</u>

California Civil Code, § 52.1 ...............................................................8

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION

Each of the causes of action asserted in this case are predicated on the unsupported assumption that National Retail Transportation, Inc. ("NRT") was Gloria Blas' ("Plaintiff") employer during the relevant time period.  The undisputed material facts will establish that NRT was <u>not</u> Plaintiff's employer and had no joint employment relationship with Plaintiff.  Since there is no genuine dispute of material fact concerning NRT's lack of employment relationship with Plaintiff, NRT cannot be liable for any of the causes of action alleged in the Complaint.  Therefore, NRT respectfully requests that it be dismissed from this lawsuit.

### II.   SUMMARY OF ARGUMENT

In order for Plaintiff to prevail on any of her claims against NRT, she must establish that NRT was her employer or had a joint employment relationship with Corporate Resource Services, Inc. ("CRS") the second defendant named in this lawsuit.  Plaintiff will be unable to establish that NRT is liable for any of her causes of action because NRT was not her employer and it did not maintain a joint employment relationship with CRS.  The undisputed material facts demonstrate that CRS and/or its subsidiary, Diamond Staffing Services, Inc. ("Diamond Staffing) was Plaintiff's sole employer and directly controlled the manner and means in which she performed her job duties.  NRT did not and had no authority to control any of the day-to-day employment decisions related to Plaintiff.  Moreover, the totality of the circumstances indicate that Diamond Staffing/CRS was also the only employer that interviewed and hired Plaintiff, established her work schedules and assignments, maintained her personnel file, assigned her on-site administrators and staff to supervise and direct human resource's related issues, set her hourly wage, issued paychecks to her, provided her with employment benefits, and enumerated terms with NRT establishing that it was Plaintiff's only employer.

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### III.  PROCEDURAL POSTURE

On September 9, 2014, Plaintiff filed an employment action in Los Angeles County Superior Court, alleging the following causes of action against NRT and CRS: (1) pregnancy discrimination; (2) retaliation; (3) failure to prevent discrimination; (4) failure to provide reasonable accommodation; (5) failure to engage in a good faith interactive process; (6) violation of the Tom Bane Civil Rights Act; (7) declaratory judgment; (8) wrongful termination; and (9) failure to permit inspection of personnel and payroll records.  (See Exhibit D.)  The crux of Plaintiff's Complaint is that CRS and NRT, as joint employers, failed to provide her with a reasonable accommodation, retaliated against, and wrongfully terminated her because of her pregnancy.  (Id.)

On October 17, 2014, Plaintiff's lawsuit was removed from the Los Angeles County Superior Court to the United State District Court Central District of California on the grounds of diversity jurisdiction.

On or about July 24, 2015, CRS and its subsidiary, Diamond Staffing Services, Inc. ("Diamond Staffing) filed voluntary bankruptcy petitions under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. (Exhibits E-F.)

On August 12, 2015, NRT filed a motion to stay the entire case.  The motion was based on the grounds that any continued proceedings against NRT would violate the automatic stay provisions triggered by the operative bankruptcy filings in this matter and would not promote judicial economy.  The motion is set for hearing on September 14, 2015.

/ / /

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

IV.    **STATEMENT OF RELEVANT FACTS**

      A.    **CRS Maintained a Temporary Staffing Services Agreement With NRT Designating It As Plaintiff's Sole Employer for All Relevant Purposes**

      NRT provides nationwide truckload, store delivery, and dedicated fleet services to major retailors.  (Declaration of Nicholas Bergonzi ("Bergonzi Decl.,) page 2, ¶ 2.)  It operates six facilities in the state of California.  Id.  NRT's Compton, California location services freight delivery exclusively to MarMax, a retailer which provides apparel and home fashions in the United States and worldwide.  Id.  As part of its freight delivery services for MarMax, NRT is required to maintain certain quality control standards.  NRT does not maintain a quality control department at the Compton, California, facility.  (Undisputed Material Fact ("UMF") 1.)  Since NRT does not maintain its own quality control department, to comply with its agreement to MarMax, it contracted with various temporary staffing agencies to obtain staff to perform freight and shipping inspections.  (Bergonzi Decl., page 2, ¶2.)

      On or about February 2011, NRT entered into a Temporary Staffing Services Agreement (the "Agreement"), with Diamond Staffing, a subsidiary of CRS.  (UMF 2.)  Amongst other positions, the Agreement called for temporary laborers to perform quality control and inspection at MarMax's Compton, California, facility.  (Id.)  It also mandated that Diamond Staffing provide NRT with on-site administrative supervision for all of its temporary workers.  (UMF 3.)  In addition, the Agreement provided that the rates of pay for all temporary staffers would be set by Diamond Staffing, and that these temporary workers would at all times remain employees of the staffing agency.  (Id.)  The agreement also enumerated the following terms:

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1
3
DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

- Diamond Staffing would comply with all applicable laws, rules and regulations of all federal, state and local agencies;

- Diamond Staffing shall solely be responsible for the payment of all wages and for maintaining all appropriate or required personnel and payroll records;

- Diamond Staffing shall provide health insurance premiums or retirement benefits;

- Diamond Staffing to be responsible for employee file maintenance, payment of unemployment disability and/or worker's compensation claims;

- Diamond Staffing will be responsible for all safety training and deal directly with the temporary workers concerning compliance with and violations of any and all safety rules, practices, and procedures;

- Diamond Staffing reserves a right of direction and control over its temporary workers and retains authority to hire, terminate, discipline, and reassign temporary workers;

- Diamond Staffing will maintain the following expenses: (1) Employer's Liability Insurance in an amount not less than one million dollars per accident or injury; (2) Commercial General Liability Insurance; (3) Worker's Compensation Insurance. (Id.)

**B.**     **Diamond Staffing/CRS' Employees Supervised Plaintiff on a Day-To-Day Basis and Controlled the Manner and Means of Her Job Duties**

Diamond Staffing/CRS maintains all of the personnel files for its temporary staff workers. (UMF 4.) NRT is not in the custody, possession, or control of any of Diamond Staffing/CRS's payroll records. (UMF 6.) Based on the foregoing, NRT is unaware of the start dates of any of Diamond Staffing/CRS' quality control laborers. However, based on the execution date of the Agreement, it appears that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1

4

DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1  Plaintiff was hired by Diamond Staffing/CRS to be a Quality Inspector on or about

2  2011.  (UMF 5.)  NRT did not hire or interview Plaintiff.  (UMF 7.)

3       As a Quality Inspector employed by Diamond Staffing/CRS, Plaintiff's rate

4  of pay and paystubs were issued by Diamond Staffing/CRS.  (UMF 8.)  As a Quality

5  Inspector for Diamond Staffing/CRS, Plaintiff was responsible for auditing the work

6  of the Quality Control team (also temporary laborers hired by CRS.)  (UMF 9.)

7  These job duties required Plaintiff to review a portion of the incoming freight

8  inspected by Quality Controllers to ensure that they matched applicable shipping

9  manifests and to verify that the items were otherwise undamaged or unaltered.  (Id.)

10      Each day Plaintiff arrived at NRT's facility, Diamond Staffing/CRS mandated

11  that she clock in and out at a designated station in the Compton, California, facility.

12  (UMF 10.)  The designated station was located at the entry of the facility and was

13  reserved solely for Diamond Staffing/CRS employees.  (Id.)  NRT employees

14  clocked in and out at the far end of the facility.

15      Plaintiff was directly supervised by Sandra Ruiz, a Diamond Staffing/CRS

16  employee.  (UMF 11.)  Ms. Ruiz served as the Layup Lead and had an immediate

17  level of day-to-day authority over employment decisions.  (UMF 12.)  To that end,

18  Ms. Ruiz set the conditions of Plaintiff's employment by assigning her various job

19  duties and tasks on a regular basis.  (UMF 13.)  These tasks included assigning

20  Plaintiff her work station, dictating which freight Plaintiff would inspect, and

21  instructing Plaintiff which quality control team members' work she would audit.

22  (UMF 14.)

23      In addition, Ms. Ruiz would hold weekly meetings with Plaintiff and the rest

24  of the quality control team to go over goals and production requirements.  (UMF

25  15.)  Ms. Ruiz also assisted Plaintiff with the performance of her daily job duties.

26  (UMF 16.)  This assistance would take the form of physically helping Plaintiff move

27  boxes so that they could be inspected for quality.  (Id.)  Ms. Ruiz also regularly

28  observed Plaintiff receiving physical assistance from other quality control staff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1
5
DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1  members, all of which were CRS employees.  (Declaration of Sandra Ruiz ("Ruiz
2  Decl."), page 3, ¶6.)  In addition to assisting Plaintiff perform her job duties, Ms.
3  Ruiz was also responsible for training Plaintiff and the remaining quality control
4  laborers.  (UMF 17.)

5      Ms. Ruiz's additional job duties included disciplining the quality control
6  laborers.  (UMF 18.)  On a few occasions, Ms. Ruiz actually reprimanded Plaintiff
7  for failing to comply with her instructions.  (Id.)  None of the foregoing tasks were
8  directed or implemented by an NRT employee.  (UMF 25.)

9      Abiding by the terms of its Agreement, CRS also hired an on-site
10  administrator to manage and supervise human resources related issues.  (UMF 19.)
11  The administrator that was on-site during the relevant time period was Miguel
12  Suarez.  Mr. Suarez and to some extent, Ms. Ruiz, were responsible for items such
13  as providing Plaintiff with her weekly scheduling, accommodating requests for sick
14  leave, verifying timesheets, mediating employment disputes, and maintaining
15  personnel files.  (UMF 20.)

16      Aside from Diamond Staffing/CRS' Layup Lead and on-site administrative
17  personnel, the Compton, California, facility maintained an NRT employee to
18  oversee the receiving side of the freight delivery.  (UMF 21.)  The individual in
19  charge of the receiving side was Arthur Hopkins.  (Id.)  Mr. Hopkins' job duties
20  were limited to monitoring freight delivery and providing general instructions to Ms.
21  Ruiz regarding which freight required quality control.  (UMF 22-23.)  Ms. Ruiz
22  would use Mr. Hopkins' general instructions to assign the manner and means by
23  which the quality control tasks would be performed by the temporary laborers,
24  including Plaintiff.  (UMF 24.)  Mr. Hopkins was not engaged in the supervision,
25  assignment, nor observation of the work performed by Plaintiff or any other
26  temporary quality control laborer.  (UMF.)  As reflected above, these tasks were all
27  reserved for Ms. Ruiz (UMF 12-20.)
28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1
6
DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1    In most instances, Mr. Hopkins had no knowledge of what or even where in

2 the facility Plaintiff was performing her job duties.  (Declaration of Arthur Hopkins

3 ("Hopkins Decl."), pages 7-8, ¶7.)  In fact, he was confined to a separate area of the

4 facility, surrounded by walls of freight, and spent nearly seventy-five percent of his

5 time monitoring freight delivery at his computer terminal.  (UMF 26.)

6    **C.    Diamond Staffing/CRS Made the Decision to Terminate Plaintiff,**

7         **Not NRT**

8    During the Spring of 2014, Plaintiff was introduced to Susana Graciano,

9 another Diamond Staffing/CRS employee that was hired to perform quality

10 inspection at the Compton, California facility.  Various incidents ensued between

11 the two, resulting in complaints to Ms. Ruiz that Plaintiff was bullying Ms.

12 Graciano.  The bullying was reported to Veronica Perez, Diamond Staffing/CRS'

13 on-site coordinator.  As a result, Ms. Perez held a meeting with all of the quality

14 control temporary staff members to warn them of Diamond Staffing/CRS' policy

15 regarding workplace bullying.  (UMF 27.)  A few weeks after the meeting, Mr.

16 Hopkins became aware that Plaintiff was continuing to bully Diamond Staffing/CRS

17 employees.  (UMF 28.)  As a result, on May 2, 2014, Mr. Hopkins wrote an e-mail

18 to Ms. Perez to request that she end Plaintiff's assignment only at NRT's receiving

19 division.  (UMF 29.)

20    Ms. Perez responded to Mr. Hopkins' May 2, 2014, e-mail indicating that she

21 had decided to "DNR" (do no return) Plaintiff altogether (this included not only

22 removing Plaintiff from the receiving department, but also terminating her outright

23 as a CRS employee).  (UMF 30.)  In deciding to terminate Plaintiff, Ms. Perez's e-

24 mail explained that she had earlier spoken to Plaintiff (at the bullying meeting)

25 about respecting CRS' employees and that her behavior would not be tolerated.

26 (UMF 30.)

27 / / /

28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1                              7
DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1  Mr. Hopkins is not authorized to hire, discipline, or terminate any of NRT's

2  temporary laborers.  (UMF 31.)  Based on the foregoing, Mr. Hopkins did not

3  request that Plaintiff's employment with Diamond Staffing/CRS be terminated.

4  (UMF 32.)  Moreover, he did not request that Plaintiff's services at NRT cease.

5  (UMF 29.)

6  **V.    LIABILITY ANALYSIS**

7  **A.    NRT Is Not Liable For Any of Plaintiff's Causes of Action Because**

8  **NRT Was Not Her Employer and It Had No Day-to-Day Control**

9  **Over Her Job Duties**

10  The FEHA, Bane Act, and each of Plaintiff's non-statutory causes of action

11  predicates potential liability on the status of the defendant as an employer.

12  Stevenson v. Sup. Ct. (1997) 16 Cal.4th 880, 887;  California Civil Code Section

13  52.1; Vernon v. State (2004) 116 Cal.App.4th 114, 123; See also Carrisales v.

14  Department of Corrections (1990) 21 Cal.4th 1132, 1135) ("If there is no proscribed

15  employment practice, the FEHA does not apply.").  An employee who seeks to treat

16  separate entities as a single employer bears a heavy burden.  Laird v. Capital

17  Cities/ABC, Inc. (1998) 68 Cal. App. 4th 737-38.

18  In determining whether a defendant is an employer, courts consider the

19  "totality of circumstances" that "reflect upon the nature of the work relationship of

20  the parties, with emphasis upon the extent to which the defendant controls the

21  plaintiff's performance of work duties."  Vernon v. State (2004) 116 Cal. App. 4th

22  114, 124.  The requisite level of control requires a comprehensive and immediate

23  level of day-to-day authority over employment decisions.  Id. at 127-128.  In

24  analyzing the level of day-to-day authority, "the right to control the means and

25  manner of the worker's performance is the most important."  Id. at 126.  **Mere**

26  **instruction by the contracting entity regarding the results to be achieved does**

27  **not suffice**.   See Marsh v. Tilley Steel Co. (1980) 26 Cal.3d 486, 491-492 (finding

28  that there was no joint employer liability because although the borrowing employer

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1
8
DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1  was tasked with advising the operator of the particular work results to be achieved,

2  the specific details were left to the borrowed employee, a crane operator); and

3  <u>Kowalski v. Shell Oil Co.</u> (1979) 23 Cal.3d 168, 171-178[1].

4        In addition to control, the court looks to the following factors in its "totality of

5  circumstances" approach:

6      •    The authority of the special employer to hire, transfer, promote,

7              discipline or discharge the employee;

8      •    The power to set work schedules and assignments;

9      •    Control of employee records, including payroll;

10      •    The payment of salary or other employment benefits;

11      •    Whether the work is considered part of the defendant's regular business

12              operations;

13      •    Whether there was an agreement, understanding, or any meeting of the

14              minds between the original and special employer.

15  <u>Vernon v. State</u> (2004) 116 Cal. App. 4th 114, 12; <u>Jones v. County of Los Angeles</u>

16  (2002) 99 Cal. App. 4th 1039, 1045-46; <u>Riley v. Southwest Marine, Inc</u>. (1988) 203

17  Cal. App. 3d 1242, 1250.

18        Here, NRT is not liable for any of Plaintiff's causes of action because it was

19  not her employer.  NRT neither interviewed, hired, nor compensated Plaintiff.

20  (UMF 6-8.)  Moreover, no joint employer relationship exists between NRT and

21  Diamond Staffing/CRS because Diamond Staffing/CRS directly controlled the

22  _____

23      [1] In that case, a plaintiff employed by Norman Peterson Company, a maintenance company, was set to work for Shell Oil Company, an oil refinery. <u>Id</u>. at 171-74.  The Plaintiff was

24  at all times *under the direct supervision* of a Peterson employee and was on Peterson's payroll.  <u>Id</u>.

25  at 178 (emphasis added).  Shell's involvement with Plaintiff was **limited to giving general instructions** regarding the size and locations of scaffolds needed by Shell.  The information boiled

26  down to providing the Peterson employee with items to be aware of to accomplish the task for which he was hired to perform.  <u>Id</u>.  Based on the foregoing facts, the court found that no joint

27  employer relationship existed.  <u>Id</u>.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1

9

DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

1  manner in means in which Plaintiff performed her job duties.  (UMF 3-26, 31-32.)

2  Specifically, Plaintiff was supervised by Ms. Ruiz, a Diamond Staffing/CRS

3  employee.  (UMF 11.)  Ms. Ruiz's supervision required her to regularly assign

4  Plaintiff her work station, dictate which freight Plaintiff would inspect, and instruct

5  Plaintiff which team members' work she would audit.  (UMF 12-14.)  In addition to

6  directing the manner and means by which Plaintiff performed her assignments, Ms.

7  Ruiz would hold weekly meetings with Plaintiff to go over goals and production

8  requirements, physically assisted Plaintiff with her work tasks, and verbally

9  reprimanded Plaintiff for not complying with her instructions.  (UMF 15-18.)  At no

10 time did any NRT employee, including Mr. Hopkins, direct or control the manner

11 and means by which Plaintiff performed her job duties.  (UMF 22-25.)  Instead, Mr.

12 Hopkins provided general instructions to Ms. Ruiz regarding the freight to be

13 inspected, a task which Plaintiff was ultimately hired by Diamond Staffing/CRS to

14 perform.  (UMF 22-24.)  Since mere instruction by a contracting entity regarding the

15 results to be achieved does not suffice to establish joint employer liability, NRT

16 cannot be liable for any of Plaintiff's causes of action.  See Marsh v. Tilley Steel

17 Co. (1980) 26 Cal.3d 486, 491-492, Kowalski v. Shell Oil Co. (1979) 23 Cal.3d

18 168, 171-178.

19         Further demonstrating the lack of any joint employer relationship between

20 Plaintiff and NRT, Diamond Staffing/CRS maintained on-site administrative

21 personnel to manage and supervise human resources related issues.  (UMF 20.)

22 NRT played no roll in any of these functions and was generally unaware of any of

23 the administrative items involving Plaintiff.  (UMF 25.)  Moreover, the entity which

24 was solely responsible for terminating Plaintiff was Diamond Staffing/CRS.  NRT

25 had no authority to terminate Plaintiff and only narrowly requested that her

26 assignment end at its receiving division.  (UMF 29, 31-32.)

27 / / /

28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9075-0503.1

10

DEFENDANT NATIONAL RETAIL TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT

**B.**  **NRT Is Not Liable For Any of Plaintiff's Causes of Action Because the Totality of Circumstances Establish that No Joint Employment Relationship Existed Between NRT and Diamond Staffing/CRS**

In addition to having no control over Plaintiff's day-to-day activities or termination, the totality of circumstances reflect the fact that no joint employment relationship existed between NRT and Diamond Staffing/CRS.  To that end, Diamond Staffing/CRS established Plaintiff's work schedules and assignments, clock-in and out area, maintained her personnel file, set her hourly wage, issued paychecks to her, and provided Plaintiff with various employment benefits.  (UMF 8, 10, 14-20.)  Equally important, the Agreement between NRT and Diamond Staffing/CRS clearly established that Diamond Staffing/CRS was Plaintiff's sole employer.  (UMF 3.)   See also Caso v. Nimrod Productions, Inc. (2008) 163 Cal.App.4th 881, 889-90 (holding that a contract which sets forth that a defendant will retain control over the work which the injury/violation arose supports a finding of special employment.  As a result, there can be no doubt that Diamond Staffing/CRS was Plaintiff's sole employer.  Given the foregoing, NRT cannot be liable for any of the causes of action asserted by Plaintiff.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

VI.   <u>CONCLUSION</u>

Based on the foregoing, NRT respectfully requests that the Court grant summary judgment in its favor on each of the nine causes of action asserted by Plaintiff because no genuine issue of triable material fact is in dispute.  As reflected above, the uncontroverted facts establish that NRT was not Plaintiff's employer and had no joint employment relationship with Diamond Staffing/CRS.  As a result, each of Plaintiff's causes of action may be adjudicated as a matter of law.


DATED: September 3, 2015          Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP


By:         /s/ Aashish Bhargava
            Jeffrey S. Ranen
            Aashish Bhargava
            Attorneys for Defendant, NATIONAL
            RETAIL TRANSPORTATION